# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KORY T. O'BRIEN,<br><br>        Plaintiff,<br><br>v.<br><br>LISA GULARTE, *et al*.,<br><br>        Defendants. | Case No. 18-cv-00980-BAS-MDD<br><br>**ORDER:**<br><br>**(1) DISMISSING CLAIM AGAINST DEFENDANT R. GARCIA WITHOUT PREJUDICE PURSUANT TO *SUA SPONTE* SCREENING**<br><br>**AND**<br><br>**(2) GRANTING DEFENDANTS' MOTION TO DISMISS IN ITS ENTIRETY**<br><br>**[ECF No. 26]** |

  Plaintiff Kory T. O'Brien filed a First Amended Complaint ("FAC") on August 29, 2018 after the Court granted his motion for leave to amend his original complaint to add a retaliation claim. (ECF Nos. 11–13.) The FAC alleges that Plaintiff suffered retaliation from the Defendant prisoner officials based on Plaintiff's exercise of his First Amendment right to complain about an officer's alleged "use of profanity" against Plaintiff. (ECF No. 13, FAC at 4–8.)

  The FAC added a new defendant to the case, Defendant R. Garcia, solely in

connection with this new retaliation claim. (*Id.* at 3.) Plaintiff has twice requested the issuance of a summons against Defendant Garcia, who has not been served. (ECF Nos. 29, 34.) Because the Court granted Plaintiff *in forma pauperis* status (ECF No. 5), however, Plaintiff's new claim against Defendant Garcia—which has never been subjected to a mandatory screening—must be screened by the Court *before* a summons can issue as to this Defendant. 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Subjecting the claim asserted against Garcia to a mandatory screening, the Court concludes that Plaintiff has failed to state a retaliation claim against Garcia and dismisses Garcia from the case without prejudice.

Defendants M. Bierbaum, L. Gularte, E. Flores, and A. Ekwosi[1] ("Defendants"), who were served with the original pleadings in this matter, have filed a motion to dismiss the FAC. (ECF Nos. 26, 35.) The scope of the motion is narrow. Defendants seek dismissal of (1) Gularte (on the ground that Plaintiff fails to state any claim against her), (2) any Fourteenth Amendment Equal Protection claim raised against all Defendants, and (3) any state law claims "that may be inferred from the FAC," against all Defendants. (*Id.*) Plaintiff has filed an "objection" and opposition to the motion. (ECF No. 33.) For the reasons herein, the Court grants in full Defendants' motion to dismiss.

## BACKGROUND

Plaintiff is an inmate incarcerated at the Richard J. Donovan Correctional Facility ("RJD") located in San Diego, California. (FAC at 1.) He was assigned to the sewing department in the shoe factory at RJD. (FAC at 9.) All Defendants are

---

[1] Plaintiff sued Defendant A. Ekwosi erroneously as "Anthony Ewoski." (ECF No. 24 at 2 (return of waiver of summons noting erroneous name of this Defendant).) Defendants' motion to dismiss uses Defendant's correct name. (*See* ECF No. 26.) When quoting from Plaintiff's pleadings, the Court has altered the name to reflect this Defendant's actual name.

employed by the California Prison Industry Authority ("CALPIA").[2] (*Id*. at 2–3.)

Plaintiff alleges that on April 11, 2017, Defendant Ekwosi, a CALPIA supervisor in the trimming department, "used profanity at Plaintiff." (FAC at 2, 4.) Plaintiff alleges that he immediately notified Defendant Flores, a CALPIA plant supervisor, about the alleged conduct. (*Id.* at 4.) Plaintiff thereafter "continually asked defendant Flores of the status of investigation against [Ekwosi]'s behavior." (*Id*.) After three weeks, Flores told Plaintiff that Ekwosi "den[ied] inappropriate behavior." (*Id*.)

On May 4, 2017, Plaintiff sent a letter to CALPIA's main office in Folsom, California, regarding Ekwosi's alleged use of profanity and requested that Ekwosi apologize and receive "necessary training." (*Id*. at 4.) Plaintiff also allegedly provided the letter to Defendant Gularte, a CALPIA supervisor in charge of training CALPIA subordinates, who did not respond. (*Id.* at 2, 4.) Instead, Defendant Garcia, another CALPIA supervisor, responded in writing that "I spoke to Mr. [Ekwosi] and he stated that he never used any profanity or foul language[.]" (*Id*. at 4.) Plaintiff contends that since Gularte and Garcia "work in close proximately [sic]" either "Garcia short-stopped the complaint against defendant [Ekwosi] or it can be inferred that defendant L. Gularte informed R. Garcia to reply . . . to prevent defendant L. Gularte's liability." (*Id*. at 4–5.) Plaintiff contends that Gularte responded to "other CDCR form [sic]" requesting her response. (*Id*. at 5.) He therefore concludes that "all defendant [sic] working together were aware of [the] complaint plaintiff made against Defendant [Ekwosi]." (*Id*.)

At some point after Plaintiff sent his letter, "inmate Thompson" was hired to

---

[2] CALPIA is a semi-autonomous state agency which operates work programs for the California Department of Corrections and Rehabilitation ("CDCR"). 15 Cal. Code Reg. § 8001.

work in the trimming department. (*Id.*) Plaintiff alleges that he "notified defendant Bierbaum and defendant Flores that Plaintiff and inmate Thompson had a previous altercation." (*Id.*) Defendant Flores is a CALPIA plant supervisor and Defendant Bierbaum is a sewing department supervisor. (*Id.* at 2.) Rather than remove Thompson, Plaintiff contends that "management found that they could administer a form of retaliation as a punishment for a complaint filed on a supervisor with the administration, while also being deliberately indifferent to the plaintiff's safety and health." (*Id.* at 5.) Ekwosi was assigned as Thompson's supervisor. (*Id.*)

Plaintiff alleges that there was a "hostile work environment" because "the defendants allowed [] Thompson to enter the department" where Plaintiff was working "repeatedly." (*Id.* at 5–6.) On July 10, 2017, he complained to Defendants Ekwosi and Flores that he was worried Thompson would attack him. (*Id.* at 10.) Plaintiff alleges that on July 17, 2017, Thompson "verbally assaulted" Plaintiff, which no Defendant intervened to stop. (*Id.* at 11.) When Plaintiff stood out of his chair and approached Thompson, Thompson "physically assaulted" Plaintiff, who then tried to restrain Thompson. (*Id.*) Plaintiff alleges he suffered a black eye and vision loss in his left eye. (*Id.*)

Plaintiff sues all Defendants in their individual and official capacities pursuant to 42 U.S.C. § 1983. (FAC at 1–3.) He principally alleges (1) retaliation in violation of the First Amendment by all Defendants (FAC at 4–8), and (2) violation of the Eighth Amendment against all Defendants (except Garcia) for failure to protect Plaintiff from Thompson, (*id.* at 9–13). Tucked into his First and Eighth Amendment claims respectively, Plaintiff also alleges that (1) the Defendants violated his "right for equal protection and treatment," (*id.* at 7), and (2) violated "prison rules, labor codes, CALPIA rules, and Codes of Civil Procedures," (*id.* at 13). Plaintiff requests several hundred thousands of dollars per defendant for each claim. (*Id.* at 15–16.)

**LEGAL STANDARDS**

The Court is required to review complaints filed by all persons proceeding IFP and by those, like Plaintiff, who are "incarcerated or detained in any facility [and] accused of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary program," "as soon as practicable after docketing." *See* 28 U.S.C. §§1915(e)(2) and 1915A(b). Pursuant to these statutes, the Court must *sua sponte* dismiss any complaint, *or any portion of a complaint*, which, *inter alia*, fails to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b) (emphasis added); *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (§1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. §1915A(b)). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").

Rule 12(b)(6) requires that a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall

short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Thus, this standard governs both the Court's screening of the new claim against new Defendant Garcia and Defendants' Rule 12(b)(6) motion to dismiss.

Although the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## DISCUSSION

**A. The Retaliation Claim is Subject to Dismissal as to Gularte and Garcia**

Because the retaliation claim against Defendant Garcia was asserted solely after the Court conducted the initial screening of Plaintiff's original complaint, the Court will screen this claim as it pertains to Garcia. In addition, Defendants move to dismiss the retaliation claim insofar as it is asserted against Defendant Gularte. (ECF No. 26-1 at 7–8.) The Court concludes that Plaintiff's retaliation claim is subject to dismissal as to both Garcia and Gularte.

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance may serve as the basis for a Section 1983 claim. *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003). Within the prison context, a claim of First Amendment retaliation contains five basic elements: (1) a state actor took an adverse action against the plaintiff; (2) because of (*i.e.* caused by); (3) the plaintiff's protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

correctional goal.  *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

The causation element of a First Amendment retaliation claim requires an inmate plaintiff to show that protected conduct was the substantial or motivating factor underlying the defendant's adverse action.  *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009).  Direct evidence of retaliatory intent rarely can be pleaded in a complaint and thus an allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal.  *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").  Timing alone, however, is generally not enough to support an inference that prison officials took an adverse action against a prisoner in retaliation for the prisoner's participation in protected conduct.  *Garcia v. Strayhorn*, No. 13-CV-807-BEN (KSC), 2014 WL 4385410, at *9–10 (S.D. Cal. Sept. 3, 2014).  "[R]ather, Plaintiff must allege sufficient facts to plausibly suggest a nexus between" the alleged protected activity and the adverse action taken by a defendant.  *Rojo v. Paramo*, No. 13cv2237 LAB (BGS), 2014 WL 2586904, at *5 (S.D. Cal. June 10, 2014).

Defendants move to dismiss the retaliation claim against Gularte on the ground that Plaintiff fails to allege a chronology of events from which retaliation by Gularte may plausibly be inferred because the FAC does not show Gularte had knowledge of Plaintiff's prior altercation with Thompson.  (ECF No. 26-1 at 7–8.)  The Court agrees that Plaintiff fails to allege an adequate causal nexus between Plaintiff's alleged protected activity, the alleged adverse action he suffered, and Gularte.

Plaintiff's sole allegations against Gularte with respect to the First Amendment can be reduced to the claim that she did not respond to a letter Plaintiff sent her regarding Ekwosi's alleged use of profanity, although she responded to another

CDCR form. (FAC at 4–5.) Even if the Court assumes that Gularte was aware of Plaintiff's grievance, Plaintiff fails to allege facts showing that Gularte retaliated against Plaintiff. There are no factual allegations that Gularte knew of the previous alteration between Thompson and Plaintiff, had responsibility for assigning or removing Thompson from the same work environment, or that she was informed by the other Defendants about Plaintiff's concerns about Thompson.

In opposing dismissal, Plaintiff contends that it can be inferred that Gularte was informed by Defendants Bierbaum, Flores, and Ekwosi about Plaintiff's concerns because Gularte is their supervisor. (ECF No. 33 at 5.) The Court will not make this inferential leap. There is no vicarious liability for civil rights violations. *Iqbal*, 556 U.S. at 676–77; *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Pursuant to Section 1983, "[a] supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a 'sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)); *see also Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). "'The requisite causal connection can be established by setting in motion a series of acts by others' . . . or by 'knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury.'" *Starr*, 652 F.3d at 1207–08 (quoting *Redman* v. *Cty. of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991) and *Dubner v. City & Cty. Of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001)). Thus, Plaintiff must set forth specific factual allegations showing that Gularte personally participated in the alleged retaliation against Plaintiff or had knowledge of Plaintiff's concerns about Thompson. The FAC fails to do so and, therefore, the claim is inadequately pleaded against Gularte.

The Court similarly concludes that Plaintiff's retaliation claim is inadequately pleaded against Garcia, another CALPIA supervisor allegedly in charge of training subordinates. Plaintiff's allegations against Garcia are merely that because Garcia "work[s] in close proximately [sic]" with Gularte, either "Garcia short-stopped the complaint against defendant [Ekwosi] or it can be inferred that defendant L. Gularte informed R. Garcia to reply . . . to prevent defendant L. Gularte's liability." (*Id.* at 4–5.) To the extent Plaintiff is alleging that this conduct constitutes retaliation, Plaintiff does not adequately identify how Garcia's response constituted an adverse action. Second, to the extent Plaintiff contends that Garcia was involved in the alleged retaliation against Plaintiff through the placement of Thompson in Plaintiff's work environment, Plaintiff fails to allege facts which connect Garcia with any events occurring after Garcia responded to Plaintiff's letter. (*See generally* FAC at 5–8.) Much like Gularte, Plaintiff appears to believe that Garcia can be liable simply because he is a supervisor. To the contrary, Plaintiff must come forward with sufficient facts which plausibly connect Garcia with the alleged retaliation against Plaintiff. *See Henry v. Sanchez*, 923 F. Supp. 1266, 1272 (C.D. Cal. 1996) (citing *Redman*, 942 F.2d at 1446–47; *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

### B.  Defendants' Remaining Dismissal Arguments

The Court turns to the remaining dismissal arguments raised by Defendants M. Bierbaum, L. Gularte, E. Flores, and A. Ekwosi. (ECF No. 26-1 at 6–9.) Defendants argue that: (1) Gularte must be dismissed from this suit because Plaintiff fails to state any claim against her, (2) any Fourteenth Amendment Equal Protection claim should be dismissed for failure to state a claim, and (3) any state law claims "that may be inferred from the FAC" should be dismissed. (*Id.*) The Court agrees. Defendants otherwise concede that the First Amendment and Eighth Amendment claims should proceed against Defendants Bierbaum, Ekwosi, and Flores. (ECF No. 35 at 4.) Thus, the Court does not address these claims as to these Defendants.

### 1. The Eighth Amendment Claim Against Gularte Is Dismissed

Because the Court has dismissed the retaliation claim against Gularte, the remaining claim for which Defendants seek Gularte's dismissal is Plaintiff's Eighth Amendment failure to protect claim. Defendants argue that any Eighth Amendment claim against Gularte must be dismissed because the FAC contains no allegations showing that she had actual knowledge of the threat Thompson posed to Plaintiff. (ECF No. 26-1 at 6.) Rather, Plaintiff only alleges he told Gularte's subordinates, Defendants Ekwosi, Flores, and Bierbaum, about this information. (*Id.*) The Court agrees this claim must be dismissed against Gularte.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2005). Prison officials must provide prisoners with medical care and personal safety and must take reasonable measures to guarantee the safety of the inmates. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (internal citations and quotations omitted). In a "failure-to-protect" Eighth Amendment violation claim, an inmate must show that a prison official's act or omission (1) was objectively, sufficiently serious, and (2) the official was deliberately indifferent to inmate's health or safety. *Id.* at 834; *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. *See Farmer*, 511 U.S. at 847; *Hearns*, 413 F.3d at 1040. A plaintiff may state a claim for deliberate indifference against a supervisor based on the supervisor's knowledge of, and acquiescence in, unconstitutional conduct by his or her subordinates. *Starr*, 652 F.3d at 1207. "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or

(2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Id.*

Plaintiff's sole allegations against Gularte with respect to the Eighth Amendment claim are that she "is [the] CALPIA administration supervisor" whose "job [is] to properly train and supervise subordinates," but she "did not do her official duties" and "knew or should have known of plaintiff's concerns of [Thompson's] violence." (FAC at 10.) Missing from the FAC, however, are allegations that Gularte in fact knew of the harm Thompson posed to Plaintiff, or acquiesced to alleged misconduct by Defendants Ekwosi, Flores, and Bierbaum. Thus, Plaintiff has failed to state an Eighth Amendment claim against Gularte.

In opposing dismissal, Plaintiff points to an August 18, 2017 response by Defendant Flores to a grievance filed by the Plaintiff, which Plaintiff contends shows that Gularte had knowledge of the possible threat Thompson posed to Plaintiff. (ECF No. 33 at 3–4; *id.* at 15 Ex. 11.) This document cannot defeat dismissal of this claim against Gularte because the document is not attached to, nor incorporated into the FAC. *See Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001) (a court may only consider materials properly submitted as part of the complaint when deciding a Rule 12(b)(6) motion). Moreover, even if the Court considers the document now, Flores's response says nothing about Gularte and post-dates the July 17, 2017 altercation. (ECF No. 33 at 15 Ex. 11.) Thus, this response says nothing about whether Gularte knew about Thompson's alleged threat to Plaintiff *before* the July 17, 2017 incident, or acquiesced to the alleged conduct of the other Defendants who allegedly failed to respond to Plaintiff's previously shared concerns about Thompson.

### 2. The Equal Protection Claim is Inadequately Pleaded

The Equal Protection Clause provides "that no State shall deny to any person

within its jurisdiction the equal protection of the laws[.]" U.S. const. amend. XIV. The Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quotation marks omitted). The first step in a traditional equal protection analysis is to identify a plaintiff's classification or group. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995). Plaintiff must show that the law has been applied in a discriminatory manner by imposing different burdens on different groups. *Id.*; *Christy v. Hodel*, 857 F.2d 1324, 1331 (9th Cir. 1988). The next step requires the Court to determine the level of scrutiny with which the Court should review the government conduct. *Freeman*, 68 F.3d at 1187. A heightened standard of review is applied only "when a statute classifies by race, alienage, or national origin" or infringes on a fundamental right guaranteed by the Constitution. *Cleburne*, 473 U.S. at 440. By contrast, classifications that do not involve a suspect class or fundamental rights are subject to the rational relationship test and accorded a strong presumption of validity. *Heller v. Doe*, 509 U.S. 312, 319 (1993).

Tucked into his First Amendment claim, Plaintiff also alleges that the Defendants violated his "right for equal protection and treatment." (FAC at 7.) It is unclear from the FAC what specific conduct Plaintiff contends violates the Equal Protection Clause of the Fourteenth Amendment. However, in opposition, Plaintiff identifies that "the disparate treatment was due to filing of complaint against" Plaintiff and Defendants' alleged violation of "prison rules, labor codes, CALPIA rules, and codes of civil procedure." (ECF No. 33 at 7.) Even if Defendants retaliated against Plaintiff in violation of his First Amendment rights, an Equal Protection claim requires *differential treatment relative to similarly situated inmates*. Plaintiff fails to provide any factual allegations in the FAC or in his opposition which show such differential treatment. Nor does Plaintiff allege he was treated differently based on his membership in a particular group, or that Defendants lack any rational basis for

their alleged treatment of Plaintiff.  Accordingly, to the extent Plaintiff sought to allege a Fourteenth Amendment claim in the FAC, the claim is subject to dismissal.

### 3. Any State Law Claims Are Dismissed

Also tucked into Plaintiff's Eighth Amendment claim is a generalized assertion that Defendants violated "prison rules, labor codes, CALPIA rules, and Codes of Civil Procedures."  (FAC at 13.)  In opposing dismissal, Plaintiff discusses supplemental jurisdiction, the interest of state law versus federal law, and principles of causation.  (ECF No. 33 at 7–8.)  Dismissal of any state law claims, however, is fairly straight forward because Plaintiff fails to identify any particular state law claim in his FAC or in his opposition.  Any claims Plaintiff sought to raise pursuant to "rules" and "codes" is such a threadbare recital that Plaintiff fails to state a claim. *Iqbal*, 556 U.S. at 678.  Thus, the Court will not undertake a searching inquiry into state law claims presentation issues or the existence of private rights of action for unidentified provisions.  (ECF No. 26-1 at 9.)

## C. Leave to Amend

Because it is not apparent that amendment would be futile, the Court grants Plaintiff leave to amend all claims which have been dismissed in this order. *See Lopez*, 203 F.3d at 1127.

## D. Magistrate Judge Jurisdiction

As a final matter, in objecting to Magistrate Judge Mitchell D. Dembin's order denying Plaintiff a thirty-day extension to file an opposition, Plaintiff avers that he "did not consent to magistrate judge jurisdiction" but instead "requested that a district judge be designated to decide dispositive matters and trial in this case[.]"  (ECF No. 32 at 3.)  Whether Plaintiff consented is irrelevant to this Court's statutory authority to "designate a magistrate judge to hear and determine any pretrial matter pending

before the court," subject to exceptions not at issue here. 28 U.S.C. § 636(b)(1)(A). Pursuant to such a designation, the Magistrate Judge does not decide dispositive matters, but rather provides a report and recommendation to this Court and this Court in turn issues a final decision. 28 U.S.C. § 636(b)(1)(C). In any event, Plaintiff's objection is mooted because the Court has issued an order on Defendants' motion to dismiss.

## CONCLUSION & ORDER

For the foregoing reasons, the Court **ORDERS** as follows:

1. Pursuant to a mandatory screening, the Court **DISMISSES WITHOUT PREJUDICE** Defendant R. Garcia. Because the Court has dismissed the only claim asserted against Garcia, the Court will not direct the issuance of a summons against Garcia at this time. <u>Plaintiff shall refrain from submitting requests to the Court for the issuance of a summons as to Defendant Garcia unless and until a valid claim is asserted</u>.

2. The Court **GRANTS** Defendants' motion to dismiss in its entirety. (ECF No. 26), such that (a) Defendant Gularte is **DISMISSED WITHOUT PREJUDICE**, (b) Plaintiff's Fourteenth Amendment claim is **DISMISSED WITHOUT PREJUDICE**, and (c) any state law claims Plaintiff purports to raise are **DISMISSED WITHOUT PREJUDICE** as well.

3. Plaintiff is **GRANTED LEAVE TO AMEND** the First Amended Complaint **<u>solely as to foregoing dismissed claims, no later than February 11, 2019</u>**. If Plaintiff decides not to file the FAC by this date, this case will proceed against the remaining Defendants for the remaining claims against them. Specifically, if Plaintiff does not amend the FAC, then only the First Amendment retaliation claim and Eighth Amendment failure to protect claim will proceed solely

against Defendants Bierbaum, Ekwosi, and Flores.

However, *if Plaintiff chooses to file an amended complaint*, the amended complaint must be complete in itself without reference to his original pleading. Defendants not named and any claims not re-alleged in the Second Amended Complaint will be considered waived. *See* S.D. Cal. Civ. L.R. 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original.").

Any amended complaint Plaintiff files must comply with the requirements of Local Civil Rule 8.2 governing complaints filed by prisoners under § 1983, which provides:

> "Additional pages not to exceed fifteen (15) in number may be included with the court approved form complaint, provided the form is completely filled in to the extent applicable in the particular case. The court approved form and any additional pages submitted must be written or typed on only one side of a page and the writing or typewriting must be no smaller in size than standard elite type. **Complaints tendered to the clerk for filing which do not comply with this rule may be returned by the clerk, together with a copy of this rule, to the person tendering said complaint**." S.D. Cal. Civ. L.R. 8.2 (emphasis added).

**IT IS SO ORDERED.**

DATED: January 2, 2019

Hon. Cynthia Bashant
United States District Judge